UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALLEN WOLFSON,                                    :

                         Plaintiff,          :          08 Civ. 0481 (AJP)

            -against-              :          **OPINION AND ORDER**

CHRISTOPHER BRUNO,                        :

                    Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**ANDREW J. PECK, United States Magistrate Judge:**

        Pro se plaintiff Allen Wolfson brings this action against defendant Christopher Bruno, his former attorney, claiming legal malpractice.  (Dkt. No. 2: Compl.; Dkt. No. 31: Am. Compl.)[1/]  Presently before the Court is Bruno's summary judgment motion.[2/]  The parties have

---

[1/]    Wolfson's complaint was filed on January 1, 2008.  (Comp.)  On September 17, 2008, the Court placed the case on the suspense docket because Wolfson was declared incompetent to be sentenced in his criminal case in this District.  (Dkt. No. 14: 9/17/08 Order.)  See United States v. Wolfson, 616 F. Supp. 2d 398, 422 (S.D.N.Y. 2008) (Koeltl, D.J.).  The case was restored to the active docket on April 1, 2011.  (Dkt. No. 25: 4/1/11 Order.)  Wolfson filed a motion to clarify his complaint on May 16, 2011.  (Am. Compl.)

        Bruno's April 29, 2011 motion to dismiss was granted on consent as to the claims relating to Bruno's representation of Wolfson in criminal cases and denied without prejudice as to the malpractice claims relating to Bruno's representation in civil cases.  (Dkt. No. 30: 5/17/11 Order.)

[2/]    Bruno has a habit of failing to docket his motion papers.  (See, e.g., Dkt. No. 43: 9/20/11 Order; Dkt. No. 30: 5/7/11 Order.)  He is directed to file all of his motion papers via the Court's ECF system.

2

consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No.

32.)  For the reasons set forth below, Bruno's summary judgment motion is <u>GRANTED</u>.

## FACTS

Wolfson contacted attorney Bruno[3] in October 2002 and formally retained his legal

services on October 24, 2002 for his criminal case, <u>United States</u> v. <u>Wolfson</u>, 00 Cr. 0628, known

as the "Five Stock Indictment" case.  (Bruno Rule 56.1 Stmt. ¶¶ 1-2;[4] Bruno Aff. ¶¶ 7-8, 10 & Ex.

---

[3]   Bruno is licensed to practice law in New York and is a member in good standing of the bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.  (Bruno Aff. ¶¶ 1-2.)

[4]   Although the Court gave Wolfson the required notice pursuant to SDNY-EDNY Local Civil Rule 56.2 (<u>see</u> Dkt. Nos. 49-50: 11/9/11 & 11/10/11 Orders; <u>see also</u> Dkt. No. 51: 11/28/11 Memo Endorsed Order granting Wolfson an extension), he failed to comply with Local Civil Rule 56.1(b).  Accordingly, the Court can and does rely on Bruno's Rule 56.1 Statement.

> "Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local [Civil] Rule 56.1 Statement that have not been controverted by a Local Rule 56.1 statement from the non-moving party."  <u>Gadsden</u> v. <u>Jones Lang Lasalle Ams., Inc.</u>, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) (collecting cases). . . .

<u>Ballard</u> v. <u>Children's Aid Soc'y</u>, 781 F. Supp. 2d 198, 202-03 (S.D.N.Y. 2011); <u>accord</u>, <u>e.g.</u>, <u>Newsome</u> v. <u>Artale</u>, 09 Civ. 10196, 2011 WL 5172543 at *1 n.1 (S.D.N.Y. Nov. 1, 2011) ("Plaintiff's affidavit in opposition does not specifically controvert the relevant facts set forth in Defendants' Rule 56.1 submission, and thus the Court deems admitted the facts recounted in Defendants' statement."); <u>Crawford-Bey</u> v. <u>N.Y. & Presbyterian Hosp.</u>, 08 Civ. 5454, 2011 WL 4530193 at *1 n.1 (S.D.N.Y. Sept. 30, 2011) ("Because Plaintiff failed to submit her own [Local Civil Rule] 56.1 statement, despite specific prompting from the Court, the facts set forth in Defendant's 56.1 statement . . . are deemed admitted."); <u>Buckman</u> v. <u>Calyon Sec. (U.S.A.) Inc.</u>, 09 Civ. 6566, --- F. Supp. 2d ----, 2011 WL 4153429 at *3 n.42 (S.D.N.Y. Sept. 13, 2011) (Local Civil Rule "56.1 statements not explicitly denied by plaintiff are deemed admitted."); <u>Tomlins</u> v. <u>Vill. of Wappinger Falls Zoning Bd. of Appeals</u>, 08 Civ. 9813, --- F. Supp. 2d ----, 2011 WL 2714213 at *1 n.2 (S.D.N.Y. July 8, 2011) ("[A]ny facts averred in Plaintiff's Rule 56.1 submission that are supported by the record and not specifically and expressly controverted by properly supported statements in Defendants'
(continued...)

A: Rep. Agreement.)  Wolfson was convicted by a jury on all counts in March 2003.  (Bruno Rule 56.1 Stmt. ¶ 3; Bruno Aff. ¶ 11.)

On May 30, 2003, Wolfson and Bruno entered into a second representation agreement "intended for the resolution of these additional matters by way of a global settlement in order to minimize ultimate criminal and civil exposure."  (Bruno Rule 56.1 Stmt. ¶¶ 4, 7-10; Bruno Aff. ¶¶ 15-19 &  Ex. B: 2d Rep. Agreement.)  The "additional matters" were:  (1) United States v. Wolfson, 02 Cr. 1588 ("Freedom Surf Indictment"), an unrelated criminal stock fraud case before Judge Hellerstein in this District; (2) an unrelated criminal stock fraud investigation conducted by the U.S. Department of Justice's Criminal Fraud Unit in Washington, DC ("DOJ Investigation"); (3) In re Wolfson, Securities Act Release No. 8614, Exchange Act Release No. 52480 (Sept. 21, 2005) ("SEC-AP"), an administrative proceeding, parallel to the Five Stock Indictment case, before the SEC in Washington, DC; and (4) SEC v. Wolfson, 02 CV 1086 ("SEC-Utah"), a civil case in U.S. District Court for the District of Utah, parallel to the Freedom Surf Indictment criminal case.  (Bruno Rule 56.1 Stmt. ¶¶ 5, 9; Bruno Aff. ¶¶ 15, 18 & Ex. B.)  The second representation agreement stated:

> It is agreed and understood that representation by the firm pursuant to this Representation Agreement does not include the trial of any of the above-referenced matters.  It is further agreed that, if for some unforseen reason any of these matters were to proceed to trial, a new retainer would have to be agreed upon.

(Bruno Aff. Ex. B: 2d Rep. Agreement.)

---

[4/]     (...continued)
Reply Memorandum [are considered] to be admitted by Defendants."); Butler v. Gonzalez, 09 Civ. 1916, 2010 WL 3398156 at *6 (S.D.N.Y. May 18, 2010), report & rec. adopted, 2010 WL 3398150 (S.D.N.Y. Aug. 26, 2010).

   In the Freedom Surf Indictment case, in June 2003 Bruno offered that Wolfson would cooperate with the Government against the remaining defendants.  (Bruno Rule 56.1 Stmt. ¶ 15; Bruno Aff. ¶¶ 23-25.)  Wolfson and Bruno attended a <u>Kastigar</u> session with Assistant United States Attorneys (AUSA) David Esseks and Robert Holtz and the lead FBI agent, and Wolfson detailed his and others' involvement.  (Bruno Rule 56.1 Stmt. ¶ 15; Bruno Aff. ¶¶ 24-25.)  On January 21, 2004, Wolfson formally entered a guilty plea.  (Bruno Rule 56.1 Stmt. ¶ 16; Bruno Aff. ¶ 26.)  In February 2004, the Freedom Surf Indictment criminal case was consolidated with the Five Stock Indictment case for comprehensive sentencing before Judge Koeltl.  (Bruno Rule 56.1 Stmt. ¶¶ 6, 17; Bruno Aff. ¶¶ 14, 27 & Ex. C: Bruno 2/9/04 Letter to Court.)

   Throughout 2003 and into 2004, Bruno interceded with the federal prosecutors resulting in the DOJ Investigation being dropped without Wolfson being indicted.  (Bruno Rule 56.1 Stmt. ¶ 18; Bruno Aff. ¶ 28.)

   In the SEC-AP case, Wolfson agreed to settle with the SEC in June 2005, and the Order was filed on September 21, 2005.  (Bruno Rule 56.1 Stmt. ¶¶ 21, 23; Bruno Aff. ¶¶ 31-33, 35-36, 38-39 & Ex. F: SEC Settlement Order.)  In the settlement, Wolfson agreed to a consent decree that neither admitted nor denied the underlying civil allegations, the SEC waived all aspects of a monetary judgment due to Wolfson's inability to pay, and Wolfson agreed to conduct-related bars with a right to reapply for removal in the future.  (Bruno Rule 56.1 Stmt. ¶ 22; Bruno Aff. ¶¶ 33-38 & Ex. F: SEC Settlement Order ¶ IV.)

   In the SEC-Utah case, Bruno alleges that he negotiated a settlement similar to that in the SEC-AP case.  (Bruno Rule 56.1 Stmt. ¶¶ 29-30; Bruno Aff. ¶¶ 41-42.)  Bruno alleges that

he kept Wolfson apprised of the settlement discussions and that Wolfson authorized Bruno to accept the settlement offer.  (Bruno Rule 56.1 Stmt. ¶ 31; Bruno Aff. ¶¶ 43-44.)  Wolfson, however, alleges that Bruno never communicated the SEC's settlement offer to him.  (Dkt. No. 48: Wolfson Opp. Br. at 2, 3.)

Meanwhile, in September 2005, Wolfson sent a letter to Avraham Moskowitz, his former counsel in the Five Stock Indictment case, asserting that Bruno and Moskowitz were conspiring with the prosecutors to secure his convictions in the consolidated criminal cases.  (Bruno Rule 56.1 Stmt. ¶ 32; Bruno Aff. ¶¶ 45-46; Wolfson Opp. Br. at 3-4.)  Moskowitz forwarded Wolfson's letter to Bruno and to AUSA Esseks, who forwarded it to Judge Koeltl.  (Bruno Aff. ¶ 45 & Ex. H: Bruno 9/9/05 Letter to Court; Wolfson Opp. Br. at 4.)  Judge Koeltl appointed Nancy Ennis to serve as Wolfson's <u>Curcio</u> counsel; she informed Judge Koeltl that Wolfson maintained his conspiracy theory even though she was unable to discern a basis for the allegations.  (Bruno Aff. ¶¶ 47-48; Wolfson Opp. Br. at 4.)   Recognizing an inherent conflict of interest in further representation, Judge Koeltl appointed James Cohen to represent Wolfson in the consolidated criminal cases on September 21, 2005 and relieved Bruno as Wolfson's counsel.  (Bruno Rule 56.1 Stmt. ¶ 33; Bruno Aff. ¶¶ 48-49; Wolfson Opp. Br. at 4.)  Wolfson asserts that Bruno was dismissed because he was violating his fiduciary duty due to the alleged conspiracy.  (Wolfson Opp. Br. at 1.) Moreover, Wolfson alleges that he "never terminated his relationship with [Bruno] when [he] put forth his conspiracy theory to judge [sic] Koeltl."  (Wolfson Opp. Br. at 2.)

Bruno alleges that he subsequently brought new counsel Cohen up to speed on the consolidated criminal cases and informed him of the full scope of his representation and that Cohen

stated that Wolfson intended to handle the SEC civil cases himself.  (Bruno Rule 56.1 Stmt. ¶ 34; Bruno Aff. ¶ 50.)  Wolfson and Bruno ceased attorney-client conversations  regarding the SEC-AP and SEC-Utah cases.  (Bruno Rule 56.1 Stmt. ¶¶ 33, 35; Bruno Aff. ¶¶ 45-46, 51.)  Bruno was never contacted by Wolfson or Cohen to continue to represent Wolfson in the SEC-Utah case.  (Bruno Rule 56.1 Stmt. ¶¶ 41-42; Bruno Aff. ¶ 60.) Wolfson, however, alleges that he never discussed his other cases with Cohen and that he did not tell Cohen that he intended to handle the SEC-Utah case. (Wolfson Opp. Br. at 4.)

Wolfson litigated the SEC-Utah case.  (Bruno Rule 56.1 Stmt. ¶ 37; Bruno Aff. ¶¶ 53-59 & Ex. I: SEC Response 3/7/06; Bruno Aff. Ex. J: Wolfson Aff. 3/1/06 at pp. 1-2; Bruno Aff. Ex. K: Wolfson Aff. 3/7/06.)  On February 27, 2006, Wolfson requested a 120-day extension to respond to the SEC's summary judgment motion.  (Bruno Aff. ¶ 53.)  Wolfson's motion stated that he was "'forced to fire his attorney alleging that he was involved in a criminal conspiracy with the U.S. attorney [sic] in New York to falsely convict'" him.  (Bruno Rule 56.1 Stmt. ¶ 38; Bruno Aff. ¶ 54 & Ex. I: SEC Response 3/7/06 at 2 n.2, quoting Wolfson's motion.)  In another filing in Utah, Wolfson stated that he "fired his attorney [in the Five Stock Indictment case] alleging that his attorney was working with the prosecutor in order to falsely convict" Wolfson.  (Bruno Rule 56.1 Stmt. ¶ 38; Bruno Aff. ¶ 56 & Ex. J: Wolfson Aff. 3/1/06 at 1.)  On May 4, 2006, Judge Campbell granted the SEC's summary judgment motion and ordered Wolfson to disgorge $76,562.50 from the sale of Freedom Surf stock, to pay $27,671 in prejudgment interest, and pay a civil penalty of $110,000.  (Bruno Rule 56.1 Stmt. ¶¶ 39-40; Bruno Aff. ¶¶ 58-59 & Ex. L: Campbell Order &

Memo. Decision.)  See also SEC v. Wolfson, No. 2:02 CV 1086, 2006 WL 1214994 at *10-11 (D. Utah 2006), aff'd, 294 F. App'x 701 (10th Cir. 2007).

In the consolidated criminal cases, Judge Koeltl sentenced Wolfson to 104 months imprisonment, $1,000,000 in restitution and conduct-related bars "almost identical to those that he had agreed to in the [SEC-] AP Case."  (Bruno Aff. ¶ 61 & Ex. M: Criminal Judgment.)

## ANALYSIS

### I.    SUMMARY JUDGMENT STANDARDS

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Ret. Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is generally disputed." Fed. R. Civ. P. 56(c); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'" (citations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[5/] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See,

---

[5/]     See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v.

U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987).

To evaluate a fact's materiality, the substantive law determines which facts are critical and which

facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

While "disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or

unnecessary will not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g.,

Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

        "The Court recognizes that it must extend extra consideration to pro se plaintiffs" and

that "pro se parties are to be given special latitude on summary judgment motions."  Salahuddin v.

Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Rakoff, D.J. & Peck, M.J.) (citations &

quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se

party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they

suggest'").[6/]  "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual

requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence,

---

[6/]     See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v.
Armstrong, 204 F. App'x 987, 988 (2d Cir. 2006), cert. denied, 552 U.S. 906, 128 S. Ct. 209
(2007); Gildor v. U.S. Postal Serv., 179 F. App'x 756, 758 (2d Cir. 2006); Porter v.
Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687
(2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo
Police Dep't, 46 F. App'x 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645
(2003).

is not sufficient to overcome a motion for summary judgment." <u>Cole</u> v. <u>Artuz</u>, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[7]

## II.    BRUNO IS ENTITLED TO SUMMARY JUDGMENT DISMISSING WOLFSON'S LEGAL MALPRACTICE CLAIM

### A.    <u>Choice of Law Analysis</u>

Bruno argues that New York law applies.  (Bruno Br. at 20-22.)  While Wolfson mentions that the civil cases against him were brought in Utah and Washington, DC (Dkt. No. 48: Wolfson Opp. Br. at 2), he did not address the choice of law issue and seems to apply New York law (Wolfson Opp. Br. at 2, 3, 5).  Where "[t]he parties' briefs assume that New York law controls . . . such 'implied consent . . . is sufficient to establish choice of law.'"  <u>William A. Gross Constr. Assocs., Inc.</u> v. <u>Am. Mfrs. Mut. Ins. Co.</u>, 07 Civ. 10639, 2009 WL 427280 at *6 (S.D.N.Y. Feb. 23, 2009) (Peck, M.J.) (quoting <u>Krumme</u> v. <u>WestPoint Stevens Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000), & citing cases); <u>accord</u>, <u>e.g.</u>, <u>Marache</u> v. <u>Akzo Nobel Coatings, Inc.</u>, 08 Civ. 11049, 2010 WL 908467 at *7 n.17 (S.D.N.Y. Mar. 12, 2010) (Peck, M.J.), <u>report & rec. adopted</u>, 2010 WL 3731124 (S.D.N.Y. Sept. 7, 2010).

---

[7]    <u>See also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Acomb</u>, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); <u>James</u> v. <u>Phillips</u>, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); <u>Thompson</u> v. <u>Tracy</u>, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); <u>Bunting</u> v. <u>Nagy</u>, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); <u>Rodriguez</u> v. <u>McClenning</u>, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); <u>Pack</u> v. <u>Artuz</u>, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); <u>Rector</u> v. <u>Sylvania</u>, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); <u>Walker</u> v. <u>Vaughan</u>, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); <u>Hussein</u> v. <u>Waldorf-Astoria</u>, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001) (Chin, D.J.), <u>aff'd</u>, 31 F. App'x 740 (2d Cir. 2002).

In any event, New York law is the proper choice of law.  "In diversity actions, federal courts follow the choice-of-law rules of the forum state to determine the controlling substantive law."  Santoro v. Donnelly, 340 F. Supp. 2d 464, 484 (S.D.N.Y. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938)); accord, e.g., Krauss v. Manhattan Life Ins. Co., 643 F.2d 98, 100 (2d Cir. 1981).  "New York courts have adopted a flexible choice of law approach and 'seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute.'"  White Plains Coat & Apron Co. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006); accord, e.g., Arakelian v. Omnicare, Inc., 735 F. Supp. 2d 22, 38 (S.D.N.Y. 2010); Moltner v. Starbucks Coffee Co., 08 Civ. 9257, 2009 WL 3573190 at *1 (S.D.N.Y. Oct. 23, 2009), aff'd, 624 F.3d 34 (2d Cir. 2010).

New York has the greatest interest in this litigation because (1) Bruno is licensed to practice in New York, and (2) the overarching goal of the second representation agreement was to minimize Wolfson's sentence before Judge Koeltl, which was to occur in New York.  See, e.g., Wolfson v. Moskowitz, 08 Civ. 8796, 2009 WL 1515674 at *2, *4-5 (S.D.N.Y. June 1, 2009) ("In a legal malpractice case, New York's interest is predominant when the attorney being sued is licensed in New York . . . ." (citing cases)); Denney v. Jenkens & Gilchrist, 230 F.R.D. 317, 335 (S.D.N.Y. 2005) ("A state has a paramount interest in regulating the conduct of attorneys licensed to practice within its borders."), aff'd in part, vacated in part, sub nom. Denney v. Deutsche Bank AG, 443 F.3d 253 (2d Cir. 2006);  Seippel v. Jenkens & Gilchrist, P.C., 341 F. Supp. 2d 363, 380 (S.D.N.Y. 2004) ("New York's interest in regulating the conduct of its attorneys gives it the predominant interest in this matter" for recission of an excessive fee arrangement.); Diversified

Group, Inc. v. Daugerdas, 139 F. Supp. 2d 445, 452-53 (S.D.N.Y. 2001) (applying New York's interests analysis and holding that a "state has a paramount interest in regulating the conduct of attorneys licenced to practice within its borders"); LNC Invs., Inc. v. First Fidelity Bank, N.A., 935 F. Supp. 1333, 1350-51 (S.D.N.Y. 1996) (malpractice claim against New York attorney is governed by New York law, applying New York's interests analysis); Shaklee Corp. v. Oberman, 91 Civ. 6870, 1993 WL 378268 at *1 (S.D.N.Y. Sept. 20, 1993) ("New York has the predominant interest in issues involving legal malpractice allegedly committed by a New York attorney. . . .").

**B.**    **Legal Standard for Legal Malpractice Claims**

"'In a diversity action based on attorney malpractice, state substantive law, here that of New York, applies.'" Nordwind v. Rowland, 584 F.3d 420, 429 (2d Cir. 2009) (quoting Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008)); accord, e.g., Barry v. Liddle, O'Connor, Finkelstein & Robinson, 98 F.3d 36, 38 (2d Cir. 1996); Banker v. Nighswander, Martin & Mitchell, 37 F.3d 866, 871 (2d Cir. 1994).[8/]

To prevail on a legal malpractice claim under New York law, the plaintiff must establish: "'(1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages.'" Nordwind v. Rowland, 584 F.3d at 429 (quoting Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)); accord, e.g., Lok Prakashan, Ltd. v. Berman, 349 F. App'x 640, 642 (2d Cir. 2009); Rubens v. Mason, 527 F.3d at 254-55; Allianz Ins. Co. v. Lerner,

---

[8/]    See also, e.g., Robinson v. Holder, 07 Civ. 5992, 2008 WL 2875291 at *2 n.1, *6 (S.D.N.Y. July 22, 2008); Ayala v. Fischman, 97 Civ. 6698, 2001 WL 1491292 at *3 (S.D.N.Y. Nov. 26, 2001); Pal v. Sinclair, 90 F. Supp. 2d 393, 399 (S.D.N.Y. 2000).

416 F.3d 109, 118 (2d Cir. 2005).[9/]  To succeed on summary judgment, the defendant must establish

"'that the plaintiff is unable to prove at least  one of the essential elements.'"  Rubens v. Mason, 527

F.3d at 255; see, e.g., Carney v. Philippone, 332 F.3d 163, 167 (2d Cir. 2003); Stonewell Corp. v.

Conestoga Title Ins. Co., 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010); Smartix Int'l Corp. v.

Garrubbo, Romankow & Capese, P.C., 2009 WL 857467 at *2.

          To establish negligence, the plaintiff must show that the "attorney's conduct 'fell

below the ordinary and reasonable skill and knowledge commonly possessed by a member of his

profession.'"  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d at 337; accord, e.g., England

v. Feldman, 2011 WL 1239775 at *3; Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d

at 209; Gurvey v. Cowan, Liebowitz & Latman, PC, 06 Civ. 1202, 2009 WL 1117278 at *6

(S.D.N.Y. Apr. 24, 2009).  "A complaint that essentially alleges either an 'error of judgment' or a

'selection of one among several reasonable courses of action' fails to state a claim for malpractice."

Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d at 337; accord, e.g., McCord v. O'Neill, 369

F. App'x 237, 239 (2d Cir. 2010); Lok Prakashan, Ltd. v. Berman, 349 F. App'x at 642.[10/]  Summary

judgment should be granted "[w]here it is apparent that the attorney exercised reasonable judgment

as to how to proceed, or where the client cannot establish another requisite element of the claim as

---

[9/]    See also, e.g., England v. Feldman, 11 Civ. 1396, 2011 WL 1239775 at *3 (S.D.N.Y.
Mar. 28, 2011); Smartix Int'l Corp. v. Garrubbo, Romankow & Capese, P.C., 06 Civ. 1501,
2009 WL 857467 at *2 (S.D.N.Y. Mar. 31, 2009); Robinson v. Holder, 2008 WL 2875291
at *6; Pal v. Sinclair, 90 F. Supp. 2d at 399.

[10/]   See also, e.g., Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d at 209; Gurvey
v. Cowan, Liebowitz & Latman,PC, 2009 WL 1117278 at *6; Kirk v. Heppt, 532 F. Supp.
2d 586, 592 (S.D.N.Y. 2008).

a matter of law . . . ."  Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d at 209; accord,

e.g., Rubens v. Mason, 527 F.3d at 255; Allianz Ins. Co. v. Lerner, 416 F.3d at 118.

    On a motion for summary judgment, expert testimony is often required to establish

the standard of care in the legal profession; however, expert testimony may be unnecessary where

"'the ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the

professional service.'"  Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d at 209; accord,

e.g.,  Sallam v. Nolan, No. 96-9661, 116 F.3d 466 (table), 1997 WL 311607 at *2 (2d Cir. June 11,

1997); Nobile v. Schwartz, 265 F. Supp. 2d 282, 288 (S.D.N.Y. 2003); Sheehy v. New Century

Mortg. Corp., 690 F. Supp. 2d 51, 63, (E.D.N.Y. 2010); Smartix Int'l Corp. v. Garrubbo, Romankow

& Capese, P.C., 2009 WL 857467 at *2.

    To find proximate cause and actual damages, the plaintiff "'must meet a "case within

a case" requirement,'"  Rubens v. Mason, 527 F.3d at 255, that is, the Court must find that "'but for

the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome.'"

Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d at 209; accord, e.g., Allianz Ins. Co.

v. Lerner, 416 F.3d at 118; Barry v. Liddle, O'Connor, Finkelstein & Robinson, 98 F.3d at 39;

England v. Feldman, 2011 WL 1239775 at *4; Gurvey v. Cowan, Liebowitz & Latman, PC, 2009

WL 1117278 at *7; Smartix Int'l Corp. v. Garrubbo, Romankow & Capese, P.C., 2009 WL 857467

at *2; Nobile v. Schwartz, 265 F. Supp. 2d at 299.

  **C.**  **Application of the Legal Standards to Wolfson's Malpractice Claim**

    Wolfson presents no facts giving rise to an inference that Bruno committed legal

malpractice.  (See Dkt. No. 48: Wolfson Opp. Br.)  The mere fact that Wolfson is unhappy with the

results of his civil cases does not mean that Bruno was negligent.[11/]   Wolfson's belief that Bruno "violate[d] his ethical duty" and deviated from "[]good and accepted legal practice" (Wolfson Opp. Br. at 5) is insufficient to defeat Bruno's summary judgment motion, absent any facts to support Wolfson's <u>ipse dixit</u>.

   After Wolfson submitted his conspiracy theory, the only unresolved civil matter was the SEC-Utah case.   (<u>See</u> pages 5-6 above.)   Wolfson argues that he "never terminated his relationship with [Bruno] when [he] put forth his conspiracy theory to judge [sic] Koeltl." (<u>See</u> page 5 above.)  Wolfson argues that he was never informed of any potential settlement in the SEC-Utah case, that he "never terminated defendant in the Utah or Washington case and and [sic] was by contract required to represent Plaintiff," and that Bruno "never put the court on notice that he ws [sic] retained by plaintiff . . . [or] thathe [sic] resigned and ask [sic] to be removed." (Wolfson Opp. Br. at 3.)

---

[11/] Wolfson reasserts that Bruno committed malpractice with regard to Wolfson's criminal cases.  (<u>E.g.</u>, Wolfson Opp. Br. at 1.)  The Court does not address these arguments because the claims relating to Bruno's representation of Wolfson in criminal cases was dismissed. (<u>See</u> page 1 n.1 above.)  <u>See also</u>, <u>e.g.</u>, <u>Wolfson</u> v. <u>Moskowitz</u>, 08 Civ. 8796, 2009 WL 1515674 at *2, *5 (S.D.N.Y. June 1, 2009) ("[U]nder New York law, a party cannot maintain a cognizable claim for legal malpractice in connection with representation provided in a criminal case when his conviction still stands.  Thus, because Wolfson has not had his conviction vacated . . . , he fails to state a claim for malpractice and his complaint must be dismissed." (citations omitted)).

  Wolfson also argues that Bruno caused him to suffer economic harm through the seizure of his assets.  (Wolfson Opp. Br. at 2-3.)  The Court does not address this issue because the seizure was the result of an unrelated case brought against Wolfson's son David Wolfson, who voluntarily turned over the assets in settlement.  (Bruno Reply Br. at 6-7.)  In addition, Wolfson asserts that Bruno lied about his previous legal experience and misinterpreted the law (Wolfson Opp. Br. at 2, 4); however, Wolfson does not show that the result of the SEC-Utah case would have been different absent Bruno's alleged misconduct.

First, it is inconceivable that a reasonable client, having accused an attorney of conspiring with the prosecutors against him in a criminal case, would expect that attorney to continue to represent him in a related civil matter.  "As between attorney and client, no special formality is required to effect the discharge of the attorney.  Any act of the client indicating an unmistakable purpose to sever relations is enough." Decker v. Nagel Rice LLC, 09 Civ. 9878, 2010 WL 2346608 at *6 (S.D.N.Y. May 28, 2010) (quotations omitted); see, e.g., Pandozy v. Robert J. Gumenick, P.C., 07 Civ. 1242, 2008 WL 2190151 at *3 (S.D.N.Y. May 23, 2008); Quinones v. Miller, 01 Civ. 10752, 2003 WL 21276429 at *29 n.49 (S.D.N.Y. June 3, 2003) (Peck, M.J.) ("'[T]he attorney-client relationship is terminated only by the occurrence of one of a small set of circumstances . . . [including] acts inconsistent with the continuation of the relationship (e.g., the client's filing a grievance with the local bar association against the attorney) . . . .'") (citation omitted), report & rec. adopted, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005), aff'd, 224 F. App'x 44 (2d Cir. 2007); Rudow v. Cohen, 85 Civ. 9323, 1988 WL 13746 at *2 (S.D.N.Y. Feb 18, 1988).

Second, Wolfson's argument – that Bruno was never relieved by the court in the SEC-Utah case – fails because a review of the docket sheet in the SEC-Utah case shows that Bruno had never entered an appearance for Wolfson in that case.  (See SEC-Utah Dkt. Sheet, No. 02-CV-01086.)

Third, Wolfson clearly knew that Bruno was no longer representing him in the SEC-Utah case:  Wolfson stated in his pro se filings in that case that he had fired Bruno.  (See page 6 above.)  Wolfson opposed the SEC's summary judgment motion with pro se filings.  There was no "default" of any sort entered against Wolfson in the SEC-Utah case.

Finally, and most importantly, Wolfson cannot show that the result in the SEC-Utah case would have been any different but for Bruno's actions (or failure to act).  A review of the SEC-Utah docket sheet reveals that because the SEC-Utah case was stayed for a period because of the criminal case in New York, nothing affecting Wolfson in that case occurred until the SEC moved for summary judgment.[12]  Once the SEC filed its summary judgment motion, Wolfson appeared in the case pro se.  Judge Campbell granted summary judgment to the SEC because of Wolfson's guilty plea in the New York criminal cases (which, as noted above, cannot be challenged in this action).  Judge Campbell held that "Mr. Wolfson has already admitted under oath--in the criminal proceeding against him--that he took the actions that form the basis of the SEC's current, civil complaint against him."  SEC v. Wolfson, No. 2:02 CV 1086, 2006 WL 1214994 at *1 (D. Utah May 5, 2006); see also, id. at *2 ("In his [criminal case] allocution, Mr. Wolfson admitted under oath that he agreed to take steps to artificially inflate the price of Freedom Surf stock. . . .  According to Mr. Wolfson's sworn statement, he 'agreed to raise the price of the stock in order to defraud investors' and that '[t]he whole purpose of this was to enrich [himself] as well as others.'"); id. at *6 ("[T]he centerpiece of the evidence against Mr. Wolfson is the transcript of Mr. Wolfson's [guilty plea] allocution, wherein he admits under oath to the salient facts underlying the SEC's claims . . . . In short, Mr. Wolfson has admitted under oath to all the elements of the fraud allegations alleged in the SEC's Complaint.").

Because Wolfson offers no evidence that Bruno committed legal malpractice, and in particular no evidence that but for any alleged malpractice summary judgment would not have

---

[12]    There is no indication in the docket entries that any discovery occurred in that case.

been granted to the SEC in the SEC-Utah civil action based on Wolfson's criminal case allocution,

Bruno's summary judgment motion is <u>GRANTED</u>.

## CONCLUSION

For the reasons set forth above, Bruno's summary judgment motion is <u>GRANTED</u>,

and Wolfson's complaint is dismissed.[13/]  The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:    New York, New York
          December 16, 2011

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies to:    Allen Wolfson (Email, Regular & Certified Mail)
              Christopher Bruno, Esq. (ECF & Mail)

---

[13/]    If the pro se plaintiff requires copies of any of the cases reported only in Westlaw, plaintiff
         should request copies from Bruno.  <u>See Lebron</u> v. <u>Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009);
         SDNY-EDNY Local Civil Rule 7.2.

G:\OPIN\WOLFSONvBRUNO